188 N.J. Super. 559 (1983)
457 A.2d 1252
BUILDERS LEAGUE OF SOUTH JERSEY, PLAINTIFF,
v.
WESTAMPTON TOWNSHIP, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided January 3, 1983.
*560 Robert M. Washburn for plaintiff (Sherman, Silverstein & Kohl, attorneys).
John E. Harrington for defendant (Hartman, Schlesinger, Schlosser, Faxon & Foy, attorneys).
*561 HAINES, A.J.S.C.
Westampton Township adopted a zoning ordinance establishing minimum floor space requirements for residential units. The ordinance is challenged by plaintiff Builders League on the ground that these requirements do not relate to any permissible zoning purpose. Its motion for summary judgment is addressed by this opinion.
Plaintiff places principal reliance upon Home Builders League v. Berlin, 81 N.J. 127 (1979). That case held that minimum floor space requirements, like all zoning restrictions, must promote the public health, safety, morals or general welfare. The court recognized that, even when such restrictions do so operate, they usually cause some detriment and therefore require a balancing of the good and the bad. A predominantly detrimental regulation is not acceptable. Id. at 138-139. The required relationship must be shown on the face of the zoning ordinance, usually by showing that one or more of the zoning purposes set forth in the Municipal Land Use Law has been met. Otherwise the burden is upon the municipality to prove that it exists. Id. at 142.
Westampton's ordinance contains, on its face, various statements calculated to show that the Berlin criteria are met.[1] All are couched in conclusory terms and are therefore doubtful carriers of conviction. Their effect, assuming their evidential adequacy, is to leave the burden of proof with the League. That burden, even in a summary judgment setting, has been carried. There are no genuine factual disputes. The affidavits filed by both parties, read in the best light from the township's standpoint (while ignoring conclusory statements), coupled with the provisions of the ordinance itself, support only one conclusion: the minimum space requirements are arbitrary and bear no relation to health, safety, morals or general welfare.
*562 Standing alone, the ordinance exhibits the following defects (not intended to be comprehensive):
(1) Minimum footage varies with the number of stories of a dwelling. This denies any relation to occupancy, the only possible connection to concerns about health.
(2) The same dwelling unit is subject to different minimums in different zones. If protection of health is the objective, health cannot require different sizes in different areas of the same community.
(3) The minimums are not related to lot size or frontage, a legitimate zoning arrangement.
(4) Some apartment minimums are larger than some single-dwelling minimums. The difference is arbitrary and reflects a discouragement of multi-family housing, an improper goal.
(5) The largest minimum (1400 sq. ft.) applies to a two-story dwelling constructed in a cluster zone, usually designed for smaller houses, but is permitted on the smallest allowable township lot (10,000 sq. ft.). The provision is arbitrary.
(6) Multi-family dwelling units are assigned an 800 sq. ft. minimum but must average 1,000 sq. ft., thus requiring at least one 1,200 sq. ft. unit for every 800 sq. ft. unit. Consequently, minimum floor space requirements may be different in the same building or group of buildings and in the same zone. Further, there is a requirement that builders provide for the expansion of multi-family units in order to provide assurance that future units will meet minimum average requirements. The provision imposes a difficult if not impossible construction condition, impermissibly burdening multi-family housing in a discriminatory way.
(7) The minimum space for a one bedroom dwelling unit is between 620 and 719 sq. ft. This does not provide certainty; it raises questions as to the relationship of the minimum to any required standard.
(8) The same zone, in several instances, is provided with different minimums depending on the style of the unit. In the R-3 zone, for example, a single-family, one-story detached house must have an 1,100 ft. minimum; over one-story the minimum rises to 1,300 sq. ft.; in the case of a single-family, detached cluster home a two-story structure requires 1,400 sq. ft., and a three-bedroom, multi-family unit must have a minimum of 1,020 to 1,119 sq. ft.
(9) Multi-family units require extra square footage for extra bedrooms, while single-family, detached homes do not. The distinction is arbitrary.
The defense arguments and the answers to them are as follows:
(a) Dwelling unit sizes are consistent with the development of neighboring municipalities, a legitimate purpose under N.J.S.A. 40:55D-2 d.
*563 The statement is conclusory, supported only by generalities; no hard facts are set forth. This section of the Land Use Law does not permit arbitrary minimum floor-space requirements unrelated to the public health, safety, morals or general welfare. Its language also differs from that suggested by defendant. It states that one purpose of the law is "[t]o ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities." Dwelling size has little to do with this purpose. In any event, Westampton's ordinance promotes inconsistency since it permits so many size variations.
(b) What is healthful for the occupants of a dwelling unit is a subjective judgment, as reflected by market acceptance.
This is an ingenious definition of "health"; it bears no relation to zoning requirements.
(c) Varying lot sizes promote appropriate population densities.
This may be true, but it has nothing to do with minimum floor space.
(d) Mixed dwelling unit sizes provide space for a variety of residential uses and open spaces.
Quite clearly, however, varied residential uses have little or nothing to do with size and open space depends on lot size in relation to building size. Furthermore, minimum space requirements do not insure variety; dwellings may still be built with identical minimums.
(e) The minimums preserve the character of the neighborhood and promote and conserve the value of property.
In Berlin, the Supreme Court held that minimum floor space provisions were not shown to constitute a reasonable method of obtaining these objectives. It noted that smaller houses do not, merely because of their size, increase the value of adjacent property or adversely affect the character of the neighborhood. On the contrary, aesthetic qualities can be maintained through other devices, such as lot size, setback and side yard requirements, lot coverage ratios, topographical and landscaping requirements. Id. at 145-156.
*564 Westampton argues that plaintiff in Berlin supported these conclusions with uncontradicted testimony, which is lacking here, so that a summary judgment is inappropriate. This argument succeeds, however, only if (1) plaintiff has the burden of proof because the ordinance, on its face, shows that the minimums preserve neighborhood character and property values and that burden has not been carried, or, (2) defendant's proofs are sufficient to raise factual questions. The ordinance, by its own language, is claimed to meet the preservation goals because the township has different styles, sizes and values of dwelling units in different areas which will be maintained through minimum floor space provisions. The fact of residential diversity is supported by defense affidavits, which also provide the opinion that the minimums permit its continuation. This opinion, and the like statements in the ordinance, are conclusions, without significance unless they are supported by facts. That essential support is lacking. No evidence permits the intellectual jump from the circumstance of diversity to the conclusion that it will be preserved by minimum space requirements. No evidence refutes the observations of the Supreme Court in Berlin. The ordinance does not show, on its face, that the minimums accomplish the announced purpose. Plaintiff's arguments, based primarily upon the provisions of the ordinance, which are admitted facts, carry any burden of proof it may have on this issue, even if we assume the flat statements in the ordinance are enough to place that burden on plaintiff. The affidavits of defendant do not carry its burden, whether it arises from the inadequacies of the ordinance or the proofs presented by the plaintiff. What is more, Westampton's ordinance permits varied minimums in the same zone, the same development and, sometimes, in the same building. Consequently, if space minimums, in fact, preserve neighborhood character and property values, the ordinance would destroy them.
(f) The provisions promote desirable visual environment since smaller units interspersed throughout an area allows more open area for increased light and air and creative landscaping and arrangement of buildings on certain lot sizes.
*565 No facts relate the conclusion to Westampton. The statement supports the plaintiff's position. It says that small is best. Further, it does not guarantee small units. Plaintiff's complaint is that the minimums are too high.
(g) Mixed building sizes conserve open space because less land will be occupied by a building.
This statement is, again, merely a statement saying that smaller buildings are better. The relation of this contention to Westampton's residential facts is not shown.
(h) Planned unit developments are encouraged.
This argument is hard to follow. It appears that cluster housing, for example, may be disadvantaged by the minimums.
(i) Smaller building sizes conserves energy.
Again, small size is championed and facts are not supplied.
Westampton has shown no justification for the minimum floor space requirements of its ordinance. Furthermore, since it is obvious that insistance upon larger dwelling units is insistance upon more expensive ones, the requirements have a negative effect upon housing construction and, in that respect, are contrary to the general welfare. All minimum square footage requirements of the zoning ordinance, direct and indirect, are therefore invalid and must be set aside.
NOTES
[1] These statements are found in an amendment to the zoning ordinance, adopted after this litigation commenced.